IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEMP HYDRATE BRANDS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PRIVATE LABEL SUPPLEMENTS, INC., and STEVEN ANDERSON, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-22-956-JD |

## ORIGINAL COMPLAINT

Plaintiff Hemp Hydrate Brands Corporation files this Original Complaint against Defendant Private Label Supplements, Inc. and Steven Anderson, and respectfully shows the Court as follows:

### I.   THE PARTIES

1.   Plaintiff Hemp Hydrate Brands Corporation (hereinafter "Plaintiff" or "Hemp Hydrate") is a Canadian corporation which is registered to do business in the State of California. Hemp Hydrate is the parent corporation of Hemp Hydrate Brands USA, Ltd., a Delaware corporation with its principal place of business in Dover, Delaware. Hemp Hydrate is the successor–in-interest to Hemp Hydrate International Holdings, Inc. (hereinafter "HHIH").[1]   Plaintiff is not a citizen of Oklahoma.

---

[1] Hemp Hydrate acquired the assets of HHIH through receivership which closed on August 12, 2021. Originally acquired through 1307684 B.C. Ltd., the name was later changed to Hemp Hydrate Brands Corp.

2. Defendant Private Label Supplements, Inc. (hereinafter "PLS or "Defendant"), is an Oklahoma limited liability company organized and existing under the laws of the State of Oklahoma with its principal place of business located at 1230 NW 5th Street, Oklahoma City, Oklahoma 73106. PLS may be served with process through its registered agent Steve Anderson at 10602 South Pennsylvania Ave Ste. 16-552, Oklahoma City, Oklahoma 73170

4. Defendant Steven Anderson is a citizen of the state of Oklahoma. Anderson was the Managing Member of PLS and he may be served at 10602 South Pennsylvania Ave Ste. 16-552, Oklahoma City, Oklahoma 73170.

## II.   JURISDICTION AND VENUE

5. This Court has personal jurisdiction over each of the Defendants because they are each citizens of the State of Oklahoma and reside or do business within the district.

6. Accordingly, jurisdiction and venue are proper in this Court.

## III.   FACTUAL BACKGROUND

7. Since December 2019 PLS, has been a supplier of CBD products (*i.e.,* roll-ons, wire packaging, bottles, tips, steel roll-on balls and raw materials) to HHIH. This dispute involves three distinct issues:

8. PLS's failure to complete delivery on three orders for CBD roll-ons and raw materials that were originally ordered in December 2019, January 2020 and March 2020 (i.e., prior to the execution of the Agreement) and stored in PLS's warehouse. *See* Exhibit 1; and

9. PLS's failure to complete delivery of the partially-unfulfilled March 2020 orders (Orders # 8998 and # 8999). *See* Exhibit 2, and;

10. PLS's failure to complete delivery on two separate orders in January 2022, for CBD roll-ons and raw materials (Orders # S10798 and # S10799). *See* Exhibit 3.

**PLS's Initial Failure To Deliver On Orders For CBD Roll-Ons And Raw Materials**

11. As to the first dispute, on or about December 20, 2019 (Order # 8764), January 20, 2020 (Orders # 8831 and # 8832) and March 20, 2020 (Orders # 8998 and # 8999), HHIH ordered from PLS CBD roll-ons and raw materials. This inventory was stored in PLS warehouses in Oklahoma City for later delivery.

12. On December 20, 2019, HHIH paid $288,000 for 400,000 product units of wire packaging (*i.e.*, bottle, lid, steel ball tip) (Order # 8764) used in the process of creating rolls-on for finished goods, of which only 30,100 units were delivered, leaving a balance of 369,900 units (that, at an average cost of $0.72/unit, equals **$266,328** in value). *See* Exhibit 1.

13. On January 20, 2020, HHIH paid $17,600 for 5,050 product units of Relief Roll On (Lavender 1 oz.) (Order # 8831) (that, at an average cost of $6.60/unit, equals $33,330 in value). Also on January 20, 2020, HHIH paid $17,600 for 5,050 product units of Relief Roll On (1 oz.) (Order # 8832). These orders were fulfilled.

14. Finally, on March 20, 2020, HHIH ordered an additional 10,000 product units of Relief Roll On (Lavender 1 oz.) (Order # 8998) (that, at an average cost of

$6.60/unit, equals $66,000 in value) and an additional 10,000 product units of Relief Roll On (1 oz.) (Order # 8999) (that, at an average cost of $6.60/unit, equals $66,000 in value). HHIH paid $66,000 total or 50% on these two orders. Of the 20,000 total units ordered in March 2020, 13,255 were not delivered (that, at an average cost of $6.60/unit, equals **$87,483** in value). *See* Exhibit 2.

15. Although the January 2020 Orders #8831 and #8832 were fulfilled, only a portion of 400,000 units ordered in the December 20, 2019 (Order # 8764) were delivered, leaving a balance of 369,900 units undelivered, and further, only a portion of the 20,000 units ordered in March 2020 (Orders # 8998 and # 8999) were completed and delivered, leaving a balance of 13,255 undelivered.

16. In or about late-March 2021, PLS informed HHIH's current director Mr. Caredda about a weather event (*i.e.,* a winter storm) that occurred in February 2021. PLS claimed the weather event affected the raw materials and "almost" finished goods and/or destroyed their inventory. PLS represented to Hemp Hydrate's CPA Matt Robinson and HHIH's current director Mr. Caredda that PLS was working with its insurance adjuster and had made a claim for the damaged inventory. Plaintiff is informed and believes that PLS was reimbursed for its losses from the January 2021 weather event. Hemp Hydrate requested but did not receive all records relating to the insurance claim filed and any reimbursements received by PLS.

17. PLS failed to notify HHIH immediately, instead waiting for two months until late-March 2021. As noted above, prior to the weather event HHIH had already incurred

damages for the partially-unfulfilled December 2019 and March 2020 Orders. Presently, PLS is operational and accepting new orders (indeed, PLS accepted a January 2022 order from Hemp Hydrate as discussed below).

18.     As a result, Hemp Hydrate is entitled to a refund of **$353,811** for the partially-unfulfilled December 2019 Order for wire packaging (*i.e.*, bottle, lid, steel ball tip) and the partially-unfulfilled March 2020 Orders for Relief Roll-Ons (Lavender 1 Oz.).

### PLS's Failure To Deliver On The January 6, 2022 Orders For CBD Raw Materials

19.     After March 2021 when PLS notified Plaintiff of the weather event, PLS gave excuses for the constant delays in fulfilling the ordered- or contracted-for- inventory (*i.e.*, testing and packaging delays) and failed to provide any monetary reimbursements (as detailed above) which caused economic pressures for Hemp Hydrate regarding ongoing business relationships and revenue.

20.     Due to the pressing need for CBD products in order to maintain existing business relationships with sales distribution channels and vendors, and to generate revenue, on January 6, 2021, Hemp Hydrate ordered 6,000 product units of Hemp Relief roll on - 1 oz. (Orders # S10798 and # S10799) at $6.15/unit for a total value of **$36,900**. Hemp Hydrate prepaid in full for the inventory and PLS promised to deliver in 2 to 4 weeks. *See* Exhibit 3.

21.     As the 4-week time estimate elapsed, Hemp Hydrate repeatedly contacted PLS for updates on delivery and were provided the same excuses regarding delays from

testing and obtaining packaging materials.  To date, no product has been delivered and after several months of delay, sales channel company Accelerate moved on to another CBD roll-on provider.  As a result, Hemp Hydrate lost this sales channel and an estimated annual revenue of approximately **$60,000**, although the full impact on Hemp Hydrate's business relationships and revenue is not yet known and future lost business is believed to be at least **$60,000.**

22. Given PLS's pattern of failing to deliver prepaid inventory and the passage of time that ended sales channel relationships, Hemp Hydrate contacted PLS Founder Steven Anderson on May 25, 2022 and notified that it would not accept receipt of the most recent order.  Mr. Anderson responded that the 6,000 units for the January 2022 order were already branded Hemp Hydrate and irreversible.  Hemp Hydrate responded on May 26, 2022 and refused to accept the untimely order and discontinued the business relationship with PLS.

23. Hemp Hydrate is entitled to a refund of **$36,900** for the unfulfilled January 2022 orders and a minimum of **$120,000** for lost past and future business opportunities.

## COUNT ONE: BREACH OF CONTRACT
### (DEFENDANT PLS)

24. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

25. Under Oklahoma law, breach of contract constitutes the material failure of performance of a duty arising under or imposed by agreement.  There is a breach of contract in Oklahoma when the following elements are met: (a) formation of a contract; (b) a breach

of the contract; and (c) actual damages suffered from the breach.

26. A contract existed between the parties under the December 2019, March 2020 and January 2022 Orders.

27. PLS breached the contract by failing to fully deliver on the December 2019 and March 2020 Orders and the completely unfulfilled January 2022 Order.

28. As a direct result of PLS's conduct, Plaintiff was harmed by PLS's breach of the agreement and has suffered actual damages of **$390,711** and actual damages for past and future lost business of at least **$120,000** in an amount to be determined at trial.

## COUNT TWO : FRAUD IN THE INDUCEMENT

29. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

30. Under Oklahoma law, fraud in the inducement is a misrepresentation as to the terms, quality, or other aspects of a contractual relation, venture, or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risk, duties or obligations it has undertaken. Fraud in the inducement can arise from acts and words of omission as well as commission.

31. The elements of fraud in the inducement are: (a) a material misrepresentation, including one that involves a failure of disclosure where there is a duty to disclose; (b) known to be false at the time made; (c) made with specific intent that a party would rely on it; and (d) the party did rely on it and was damaged thereby.

 Plaintiff relied on the material omission and misrepresentation by Defendants. Defendants

made these representations with the knowledge they were false with the specific intent that Plaintiff would rely on Defendants' representations. Plaintiff seeks rescission, repayment of the actual damages of **$390,711**, lost past and future business of at least **$120,000** and punitive damages in an amount to be determined at trial.

### COUNT THREE: ACTUAL FRAUD PURSUANT TO 15 O.S. § 58

32. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

33. Under Oklahoma law, there are a series of acts, when committed, that would constitute actual fraud, including the suppression of that which is true, by one having knowledge or belief of the fact, and any other act fitted to deceive.

34. The elements of actual fraud are: (a) a material misrepresentation, including one that involves a failure of disclosure where there is a duty to disclose; (b) known to be false at the time made; (c) made with the specific intent that a party would rely on it; and (d) the party did rely on it and was damaged thereby.

35. Plaintiff relied on the material omission and misrepresentation by Defendants. Defendants made these representations with the knowledge they were false with the specific intent that Plaintiff would rely on Defendants' representations. Plaintiff relied on the material omission and misrepresentation by Defendants. Plaintiff seeks rescission repayment of actual damages in the amount of **$390,711**, lost past and future business of at least **$120,000** and punitive damages in an amount to be determined at trial.

**COUNT FOUR: CONVERSION**

36. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

37. Under Oklahoma law, the elements of conversion are: (a) the plaintiff's ownership or right to possession of the property; (b) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (c) damages.

38. Plaintiff have the right to possession of the funds at issue and has demanded is return.

39. Despite these requests, Defendants have exercised and continue to exercise dominion and control over Plaintiff's funds. The conversion of Plaintiff's funds was performed knowingly, intentionally, with malice, and with willful disregard to the rights of Plaintiffs. Plaintiff seeks actual damages in the amount of **$390,711**, lost past and future business of at least **$120,000** and punitive damages in an amount to be determined at trial.

**COUNT FIVE: UNJUST ENRICHMENT**

40. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

41. Under Oklahoma law, the elements of unjust enrichment exist if: (a) a plaintiff provided something of value to the defendant; (b) the defendant acknowledged, accepted and benefitted from what plaintiff provided; and (c) it would be inequitable for the defendant to enjoy the benefit plaintiff provided without compensating the plaintiff.

42. Plaintiff provided something of value and Defendants reaped the benefit.

Thus it would be inequitable for Defendants to fail to compensate Plaintiff.

43. Plaintiff seeks actual damages in the amount of **$390,711**, lost past and future business of at least **$120,000** and punitive damages in an amount to be determined at trial.

## V.   APPLICATION OF THE DISCOVERY RULE

51. Oklahoma follows the "discovery rule," which allows injured parties who are initially unaware that an injury has been sustained have the same rights to sue as parties whose injury is immediately ascertainable.  For example, 12 O.S. § 95 expressly provides that for "an action for relief on the ground of fraud," the "cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

52. Here, Plaintiff did not begin discovering Defendants' misrepresentations and omissions impacting all claims until after March 2021.  Thus, Plaintiff's suit is timely for causes of action wherein the statute of limitations is a minimum of two years.

## VI.   DAMAGES

53. Plaintiff seeks actual damages and lost past and future business in excess of $510,711.  Plaintiff also seeks punitive damages of not less than $150,000.00 pursuant to 23 O.S. § 9.1.  Plaintiff also seeks pre-and post-judgment interest.

## VII.   PRAYER

54. Plaintiff prays the Court awards judgment in its favor on Plaintiff's claims by:

    (1) ordering actual damages in excess of $510,711.

    (2) ordering punitive damages in excess of $150,000.00;

(3) ordering an award of Plaintiff's pre-and post-judgment interest; and

(4) such other and further relief as the Court deems just and proper in both law and in equity.

Signed this 4th day of November, 2022

Respectfully submitted,

*/s/ Allison J. Maynard*
Allison J. Maynard
Oklahoma Bar No. 19675
Allison.Maynard@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000 (Telephone)
(214) 698-1101 (Facsimile)
**ATTORNEY FOR PLAINTIFF**