IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEMP HYDRATE BRANDS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-22-00956-JD |
| PRIVATE LABEL SUPPLEMENTS, INC., and STEVEN ANDERSON, | ) ) ) ) |
| Defendants. | ) ) |

# ORDER

Before the Court is Defendants' Motion to Partially Dismiss Plaintiff's Second Amended Complaint ("Motion"). [Doc. No. 35]. The Motion seeks to dismiss Counts Two through Five of Hemp Hydrate Brands Corporation's ("Hemp Hydrate") Second Amended Complaint ("SAC"). [Doc. No. 32]. The Motion argues that Hemp Hydrate's claims for fraud in the inducement, actual fraud, conversion, and unjust enrichment should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and further argues that Hemp Hydrate's fraud in the inducement and actual fraud claims (collectively, the fraud claims) should be dismissed for failure to plead fraud with particularity under Rule 9(b). Hemp Hydrate responded in opposition ("Response"). [Doc. No. 37].

For the reasons stated below, the Court grants the Motion to the extent that it seeks dismissal of the fraud and unjust enrichment claims, and the Court denies the Motion to the extent that it seeks dismissal of the conversion claim.

I. **BACKGROUND**[1]

This case arises out of a business dispute between Hemp Hydrate (and its predecessor-in-interest, Hemp Hydrate International Holdings, Inc. ("HHIH")) and Defendant Private Label Supplements, Inc. ("Private Label" or "PLS"). Private Label has supplied CBD products and raw materials to Hemp Hydrate and HHIH since December 2019. SAC ¶ 7.

HHIH placed two orders with Private Label that are at the heart of this dispute. The first order, in December 2019, was for 400,000 product units of wire packaging. *Id.* ¶ 8. At an average cost of $0.72 per unit, the total price for this order was $288,000, which HHIH paid up front. *Id.* Out of the 400,000 units ordered, however, Private Label only delivered 30,100, leaving the remaining 369,900 ordered units—worth $266,328—undelivered. *Id.* HHIH placed the second order in March 2020. *Id.* ¶ 9. This time, HHIH ordered 20,000 units of Relief Roll On; at an average cost of $6.60 per unit, this order was for a total of $132,000. *Id.* HHIH paid half of this amount up front ($66,000). *Id.* However, Private Label delivered only 6,745 units, failing to deliver the remaining 13,255 units, which were worth $87,483. *Id.* Thus, as a result of these two partially fulfilled deliveries, Private Label allegedly failed to deliver $353,811 in products to HHIH.[2] *Id.* ¶ 10.

---

[1] The Court recounts the facts alleged in the SAC as necessary to decide the Motion and as relied upon by the parties in their briefing. However, the Court evaluated the SAC as a whole in deciding the Motion.

[2] The SAC alleges that "[f]or the December 19, 2019 and March 2020 orders, HHIH pre-paid PLS for delivery of roll-ons and raw materials for Roll-Ons to PLS of

In June 2021, HHIH was placed into receivership. *Id.* ¶ 15. By the time the receivership closed in August 2021, Hemp Hydrate acquired all of HHIH's assets, including the $353,811 Private Label owed for the unfulfilled orders. *Id.* ¶¶ 1 n.1; 16–17. However, when it acquired HHIH's assets, Hemp Hydrate had no knowledge that HHIH had prepaid for some of the undelivered merchandise. *Id.* ¶ 18. Unaware of this outstanding debt, Hemp Hydrate placed a $36,000 order with Private Label in January 2022. *Id.* ¶ 20. When Hemp Hydrate learned that HHIH had partially prepaid for the unfulfilled orders in June 2022, it informed Private Label that it would not accept the January 2022 order. *Id.* ¶¶ 23–24.

Hemp Hydrate filed this action against Private Label and its CEO, Steven Anderson ("Defendants"), alleging that they committed fraud because they were aware that Hemp Hydrate did not know about the prior, prepaid transactions, yet they did not mention the unpaid debts to fraudulently induce Hemp Hydrate to enter into the January 2022 agreement. *Id.* ¶¶ 26–27. In addition to its fraud claims, Hemp Hydrate brings claims for breach of contract, conversion, and unjust enrichment. *Id.* ¶¶ 29–33, 48–55.

Defendants move to dismiss Hemp Hydrate's claims for fraud, conversion, and unjust enrichment. Defendants argue that Hemp Hydrate lacks standing to bring tort claims because the claims belonged to Hemp Hydrate's predecessor-in-interest, HHIH, and the alleged assignment is ineffective to confer standing, and that any tort claims

---

which a total of $353,851 remains unfulfilled and unreimbursed by PLS." *Id.* ¶ 10. This appears to be an arithmetic error, as the amounts of the two allegedly prepaid, undelivered orders total $353,811, not $353,851.

relating to the 2019 and 2020 orders are time-barred. Motion at 5–10. Defendants also argue that Hemp Hydrate's fraud claims should be dismissed for failing to plead with the specificity required by Federal Rule of Civil Procedure 9(b). *Id.* at 10–12.

## II.   LEGAL STANDARD

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court must "accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court must "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678–79. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

### III. ANALYSIS

**A. Hemp Hydrate fails to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b).**[3]

Hemp Hydrate brings two claims for fraud against Defendants. The first is for common law fraud in the inducement, and the second is for actual fraud pursuant to 15 Okla. Stat. § 58. To prove its fraud claims, Hemp Hydrate alleges that Defendants "fraudulently induced and defrauded [Hemp Hydrate] in January 2022, as they knew [Hemp Hydrate] was unaware PLS owed [Hemp Hydrate]" for the prepaid inventory from the 2019 and 2020 orders, yet they "said nothing." SAC ¶¶ 38, 45. Hemp Hydrate allegedly "relied on the material omission and misrepresentation by Defendants," who "made these representations with the knowledge they were false with the specific intent that Plaintiff would rely on Defendants' representations." *Id.* ¶¶ 37, 44.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The Tenth Circuit has interpreted this rule to require plaintiffs to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.

---

[3] Although the Court addresses the assignment and statute of limitations issues in its analysis of the conversion claim, it need not reach those issues with respect to the fraud claims because it determines that the SAC fails to allege fraud as required by Rule 9(b).

2000)). In other words, "a complaint stating the 'who, what, where, when, and how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b)." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023). Moreover, courts are not required to credit a complaint's conclusory statements when determining whether a fraud claim has been sufficiently pleaded. *See Iqbal*, 556 U.S. at 678–79.

The Tenth Circuit's decision in *Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000), is instructive on alleged omissions or concealment, as alleged here. In that case, shareholders brought a fraud claim based on a theory "that the Defendants misrepresented and concealed information" about particular corporate assets. *Id.* at 1236. The court concluded that the "broad allegation" did not satisfy Rule 9(b)'s heightened pleading standard for four main reasons. *Id.* at 1237. First, the complaint did "not alert the Defendants to a sufficiently precise time frame to satisfy Rule 9(b)." *Id.* Second, the plaintiffs "fail[ed] to mention at all the place at which any misrepresentations were made." *Id.* Third, the complaint "specifie[d] nothing about the content of the alleged misrepresentations, instead reciting a general statement that the Defendants 'fail[ed] to disclose the existence, location, ownership, condition and true value of [the] assets and property.'" *Id.* Lastly, the allegations "failed to identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions." *Id.* In sum, the complaint failed to state a claim for fraud with sufficient specificity because it "broadly alleged that the Defendants concealed the true value of [the] stock without informing the court or the Defendants of the source for this contention." *Id.*

Hemp Hydrate's complaint fails under Rule 9(b) for similar reasons once stripped of conclusory statements.[4]

First, Hemp Hydrate does not identify a specific individual who made this alleged fraudulent misrepresentation or omission. Hemp Hydrate does not allege that it was communicating directly with Anderson about the January 2022 order, and it does not identify the Private Label employee with whom it placed the order or whether the unidentified employee would have had the requisite knowledge of the prior orders to omit the information. The Tenth Circuit typically requires plaintiffs alleging fraud to specify employees "by name" to satisfy Rule 9(b). *E.g.*, *George*, 833 F.3d at 1255–56 (concluding that allegations that a plaintiff "spoke with unidentified [company] employees who made false representations to him via phone" did not satisfy Rule 9(b), whereas allegations that "identify [company] employees by name" sufficed). Hemp Hydrate has not identified the employee who allegedly committed the fraudulent omission, nor has it specifically alleged Anderson's involvement—or lack thereof—in the January 2022 order.

Second, while Hemp Hydrate alleges the omissions occurred when the parties entered the January 2022 agreement,[5] Hemp Hydrate makes no mention of the place

---

[4] For instance, Hemp Hydrate alleges that Defendants used the time of Hemp Hydrate's employee transition and restructuring "to conceal their knowledge" of the balances owed for unfulfilled orders to Hemp Hydrate, *see* SAC ¶ 19, but this allegation is devoid of any factual details.

[5] The inference is that Defendants omitted material information when entering the January 2022 agreement, but Hemp Hydrate does not specify the specific date of the alleged fraud. *See* SAC ¶ 27. Under Tenth Circuit law, it is not clear that this broad

7

where Defendants allegedly made their fraudulent omission. When "allegations list the basic elements of fraud and allege some facts, but they do not indicate the time or place of the alleged misstatements," the Tenth Circuit has concluded that "[s]uch conclusory allegations do not meet the heightened pleading standard of 'particularity'" under Rule 9(b). *Heavy Petroleum Partners v. Atkins*, 457 F. App'x 735, 743 (10th Cir. 2012) (unpublished).

Finally, Hemp Hydrate's failure to allege the specific content of the alleged misrepresentation reveals the same defects as in *Koch*. *Cf.* 203 F.3d at 1237 (explaining that the complaint alleging fraud by omission "specifie[d] nothing about the content of the alleged misrepresentations, instead reciting a general statement that the Defendants 'fail[ed] to disclose the existence, location, ownership, condition and true value of [the] assets and property'"). Like the plaintiffs in *Koch*, Hemp Hydrate fails to specify what Defendants did and did not say to constitute an allegedly fraudulent omission. Hemp Hydrate alleges that Defendants "fraudulently induced or defrauded" Hemp Hydrate because it "would have never entered into the January 2022 agreement with PLS knowing that PLS owed" it for the prepaid, undelivered orders. SAC ¶¶ 27, 39, 46.

---

allegation "alert[s] the Defendants to a sufficiently precise time frame" for the alleged fraud, particularly given the lack of identification of the employee who supposedly made this omission. *Koch*, 203 F.3d at 1237; *see U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) ("In pleading the *when*, Plaintiffs documented the dates on which specific violations took place . . . ."); *see also Clinton*, 63 F.4th at 1277–78 (concluding a complaint that attached documents showing the "specific date" on which each allegedly fraudulent act occurred was pleaded with particularity). In any event, the Court concludes the SAC fails to allege other requirements of Rule 9(b) with the specificity the rule and circuit precedent demands.

8

Defendants allegedly committed fraud because "they knew [Hemp Hydrate] was unaware PLS owed" Hemp Hydrate for the prepaid inventory "and said nothing." *Id.* ¶¶ 26, 38, 45.

These broad, conclusory allegations fall short of the "extensive factual detail" plaintiffs have provided in complaints that satisfied Rule 9(b). *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (pleading "in a clear, organized, and relatively concise manner" detailed allegations about what specific contractual obligations a defendant allegedly breached, "the conduct that led to the violation," and "a detailed description of [the defendant's] alleged efforts to conceal the violations"); *see also Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006) (specifying "the content of the communications" and "how they were allegedly fraudulent" by providing what exactly the defendant communicated and attaching documents in support). Hemp Hydrate offers no specifics about Defendants' misrepresentations or omissions. Instead, the complaint provides only a general allegation that Hemp Hydrate "relied on the material omission and misrepresentation by Defendants" and that "Defendants made these representations with the knowledge they were false with the specific intent that Plaintiff would rely on Defendants' representations." *Id.* ¶¶ 37, 44. Without offering more detail about the contents, the complaint does not sufficiently apprise Defendants of how exactly they allegedly defrauded Hemp Hydrate.

In total, Hemp Hydrate's fraud claims do not state the circumstances constituting the alleged fraud with sufficient particularity to afford Defendants fair notice of Hemp Hydrate's claims or the factual ground on which they are based. *See Koch*, 203 F.3d at

1236. Therefore, the Court dismisses Hemp Hydrate's claims for fraud in the inducement and actual fraud under Federal Rule of Civil Procedure 9(b).

### B. The unjust enrichment claim fails because Hemp Hydrate does not sufficiently allege fraud.

The parties' arguments on the fraud claim also determine Hemp Hydrate's ability to move past the pleading stage on its unjust enrichment claim. Because the Court determines that Hemp Hydrate does not sufficiently allege fraud, Hemp Hydrate's claim for unjust enrichment does not survive.

Hemp Hydrate's claim for unjust enrichment alleges that it "provided something of value and Defendants reaped the benefit," so "it would be inequitable for Defendants to fail to compensate Plaintiff." SAC ¶ 54. In Oklahoma, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. In other words, an unjust enrichment claim arises when a "party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Id.*

The Oklahoma Supreme Court recently clarified that a "claim for unjust enrichment requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct." *Randle v. City of Tulsa*, Case No. 121,502, 2024 OK 40, ¶ 26, 2024 WL 2949398, at *7 (filed June 12, 2024). Here, the only allegations of "active wrongdoing" are Hemp Hydrate's claims for fraud. Because the Court dismisses those claims for

failure to state a claim with particularity, Hemp Hydrate's unjust enrichment claim must also fail.

    **C. The claim for conversion is assignable and not time-barred at this stage in the proceedings.**

In support of its claim for conversion, Hemp Hydrate alleges that it has "the right to possession of the funds at issue and has demanded [their] return." SAC ¶ 50. "Despite these requests," the SAC continues, "Defendants have exercised and continue to exercise dominion and control over Plaintiff's funds." *Id.* ¶ 51. Defendants argue that this claim "belonged to non-party HHIH" and cannot be asserted by Hemp Hydrate, and that the statute of limitations bars this claim as untimely. Motion at 5, 7–8. In response, Hemp Hydrate asserts that its claim for conversion is assignable because it is a tort "arising out of contract," not a "pure tort." Response at 4. Hemp Hydrate does not respond to the statute of limitations issue and only argues that point with respect to its fraud claims.

    *1) The conversion claim is assignable because it arises out of contract.*

In Oklahoma, conversion is defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 12, 374 P.3d 820, 825 (quoting *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 1987 OK 122, ¶ 9, 753 P.2d 1330, 1332). Although a plaintiff claiming conversion must show "'some form of wrongful possession or act of control over the property,'" it "is not necessary that the property wrongfully came into a party's possession, but only that the property was taken *or* appropriated without the owner's consent." *Id.* (quoting *Installment Fin. Corp. v.*

11

*Hudiburg Chevrolet, Inc.*, 1990 OK 55, ¶ 10, 794 P.2d 751, 753). Hemp Hydrate alleges that Defendants are liable for the conversion of funds from the 2019, 2020, and 2022 orders. Because HHIH paid for the 2019 and 2020 orders, any conversion claim for those unfulfilled orders would belong to HHIH, not Hemp Hydrate. Thus, for Hemp Hydrate to bring this claim, it must be assignable from HHIH to Hemp Hydrate.

Under 12 Okla. Stat. § 2017(D), "[t]he assignment of claims not arising out of contract is prohibited." The Oklahoma Court of Civil Appeals has construed this provision as permitting the assignment of tort claims that arise out of a breach of contract. Although the statute "prohibits the assignment of claims not arising out of contract," the court has held that "where the breach of contract gives rise to a tort, 'the basis of the wrong [is still] a contract,' and a tort claim arising from a contract's breach is 'assignable as arising out of contract.'" *First Pryority Bank v. Moon*, 2014 OK CIV APP 21, ¶ 53, 326 P.3d 528, 539 (alteration in original) (quoting *Chimney Rock Ltd. P'ship v. Hongkong Bank of Can.*, 1993 OK CIV APP 94, ¶ 11, 857 P.2d 84, 88).

Here, Hemp Hydrate's claim for conversion is based on Defendants' alleged breach of the 2019, 2020, and 2022 agreements and their consequent wrongful possession of Hemp Hydrate's funds. "Under these facts, the alleged torts are grounded in the contracts and would not be capable of existing except for the contracts." *Chimney Rock*, 1993 OK CIV APP 94, ¶ 11, 857 P.2d at 88. Therefore, based on the SAC's allegations, this conversion claim is assignable from HHIH to Hemp Hydrate.

### *2) The complaint does not provide sufficient information to determine the date the statute of limitations accrues as a matter of law.*

The Court cannot determine at this juncture whether Hemp Hydrate's conversion claim is time-barred. Oklahoma's statute of limitations provides that "[a]n action upon any contract, agreement, or promise in writing," must be brought within five years "after the cause of action shall have accrued"; in contrast, "an action for injury to the rights of another, not arising on contract," has a two-year statute of limitations. 12 Okla. Stat. § 95(A). "The statute of limitations begins to run when the cause of action accrues," and a "cause of action accrues when a litigant could first maintain an action to a successful conclusion." *City of Tulsa v. Bank of Okla.*, 2011 OK 83, ¶ 21, 280 P.3d 314, 320 (citations omitted). Although the Oklahoma Court of Civil Appeals has held that torts based on a breach of contract arise out of contract for purposes of § 2017(D), the court has held that "conversion and unjust enrichment claims" are "subject to the two-year limitations period of" § 95(A)(3). *Paddyaker v. Griffith*, 2011 OK CIV APP 97, ¶ 9, 260 P.3d 1276, 1278; *see also Tillman v. Shofner*, 2004 OK CIV APP 40, ¶ 2, 90 P.3d 582, 583 ("A claim for conversion must be filed within two years from the time the cause of action accrued.").

Hemp Hydrate has not pleaded sufficient information to determine when the cause of action for conversion accrued. A "statute of limitations defense may be appropriately resolved on a 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (citation omitted). "Typically," however, "facts must be developed to

13

support dismissing a case based on the statute of limitations." *Id.* The statute of limitations is an affirmative defense, and a "plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Hemp Hydrate argues that Defendants committed conversion by retaining funds after breaching the contracts. *See* Response at 4. But because the SAC does not allege when exactly Defendants breached the contracts, it is not clear when the claim for conversion accrues. Therefore, at this stage in the proceedings, Hemp Hydrate's conversion claim is not time-barred. Consequently, the Court denies the Motion insofar as it seeks to dismiss the conversion claim.

## IV.    CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion [Doc. No. 35] to dismiss Hemp Hydrate's claims for fraudulent inducement (Count Two), actual fraud (Count Three), and unjust enrichment (Count Five) in the Second Amended Complaint [Doc. No. 32]; DENIES Defendants' Motion to dismiss Hemp Hydrate's claim for conversion (Count Four); and DISMISSES Hemp Hydrate's claims for fraudulent inducement, actual fraud, and unjust enrichment (Counts Two, Three, and Five) without prejudice. Counts One (Breach of Contract) and Four (Conversion) of the Second Amended Complaint remain.

IT IS SO ORDERED this 20th day of September 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

14